NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**GARY Y. SUSSMAN, OSB #873568**
Assistant United States Attorney
gary.sussman@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204-2902
Telephone:  (503) 727-1000
Attorneys for the United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 3: 22-cr-00421-IM |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **KEVIN ROBERT McCARTY,** | Sentencing Date:  October 13, 2023 |
| **Defendant.** | |

Time and again, defendant contacted underage girls on various social media platforms, misrepresented his name and age, convinced them to send him sexually explicit images and videos of themselves, then extorted them relentlessly to obtain more. He is before the Court for sentencing following pleas of guilty to one count of online enticement of a minor and two counts of sexually exploiting a child.  For the reasons discussed below, the Court should impose concurrent sentences of 20 years' imprisonment on each count, followed by a life term of supervised release.

I.         FACTUAL AND PROCEDURAL BACKGROUND

In September 2021, Homeland Security Investigations agents in Portland received a request from agents in Vancouver, British Columbia, to assist in a child exploitation investigation involving several teenaged victims in Canada, all of whom had been coerced to produce and send sexually explicit images and videos of themselves (PSR ¶ 13). Defendant was the common denominator (PSR ¶ 14).

Minor Victim 1 (MV1) met defendant online when she was 14 years old (PSR ¶ 16). Defendant sent her a friend request on Snapchat, an online social media platform (PSR ¶ 18). Once she accepted his request, they moved their communications to Instagram, another social media platform (*id.*). Defendant told MV1 he was a 17-year-old singer named "Wesley Tucker" (*id.*), and asked her for nude pictures of herself. MV1 sent him what he asked for the first night they communicated online (*id.*).

They started to "date" online (*id.*). Defendant demanded more sexually explicit images and videos, and threatened MV1 when she did not comply.

Defendant eventually told MV1 that his "real" name was "Robbie MacKenzie," that he was considerably older than 17, and that he was moving to Canada to be with her (*id.*). MV1 "freaked out" and tried to block defendant on social media (*id.*). Defendant, however, contacted her friends online and messaged them with "a bunch of stuff" about her. MV1 felt trapped, as if she could not get away from him (*id.*).

**Government's Sentencing Memorandum**                                                                              **Page 2**

Defendant routinely sent nude pictures of her to her friends and posted them on social media to get her to comply with demands that she send him more (PSR ¶ 19). She eventually complied, but the demands continued.

Defendant obtained and changed the passwords for MV1's social media accounts, essentially locking MV1 out of her own accounts (PSR ¶ 20). He used her accounts to pose as MV1, and to message others attempting to orchestrate sex acts between MV1 and other boys (*id.*). He directed MV1 to date older boys at her school, and record herself performing sex acts on them (*id.*). He threatened to rape MV1's younger sister if she did not comply (*id.*).

MV1 told investigators that she sent at least 50 nude images of herself to defendant. At defendant's request, she recorded herself performing oral sex on a boy at her school and sent it to defendant so he would stop harassing her (PSR ¶ 21). He did not. Instead, he sent the video to MV1's friends and family members. (PSR ¶ 22).[1]

MV1's mother and aunt tried to intervene. MV1's mother personally communicated with defendant by phone and video chat (PSR ¶ 25). She identified defendant in a photo lineup (PSR ¶ 27).

MV1's aunt reported defendant's conduct to the National Center for Missing and Exploited Children (NCMEC) (PSR ¶ 28). She captured screenshots of communications between MV1 and defendant, who used various screen names and telephone numbers

---

[1] Investigators in Canada viewed a copy of the video, which depicted MV1 performing oral sex on a boy in a school bathroom (PSR ¶ 21). For whatever reason, the video was not preserved.

**Government's Sentencing Memorandum**                                            **Page 3**

(*id.*).  In some of those communications, defendant threatened to kill himself if MV1 tried to break up with him (*id.*).  In others, he threatened to rape MV1's younger sister (*id.*).  He said he posted MV1's nude images online, and threatened to post MV1's grandmother's address online, to visit MV1's school, and to drive up and down her street (*id.*).  He said that if anything happened to him (*i.e.*, if he was arrested), he would "get out on bail," would "cut ur sister's throat," and would "murder her" (*id.*).  He also claimed that he sent a video of MV1 engaging in sex acts to another user on Facebook (*id.*).

Defendant used MV1's Snapchat account to befriend Minor Victim 2 (MV2).  During the summer of 2021, after chatting with who she thought was MV1 (but who in fact was defendant), she sent two nude videos of herself to MV1's account (PSR ¶ 29).

After MV2 sent those videos, defendant, still posing as MV1, asked for more (*id.*).  He also asked for a video of MV2 performing oral sex on a boy, just as he had with MV1 (*id.*).  As he did with MV1, defendant told MV2 that if she did not comply, he would send her nude images to her friends on Snapchat (*id.*).  When MV2 refused to produce additional images and videos, he did just that, sending nude images to many of MV2's friends on Snapchat and Instagram (*id.*).

Defendant pursued MV2 relentlessly.  She reported that the online harassment came from multiple accounts, but the message was always the same (PSR ¶ 30).  After MV2 quit using Snapchat, defendant, again posing as MV1, reached out to her on Instagram.  The demands and threats continued (PSR ¶ 30).

**Government's Sentencing Memorandum**                                                                 **Page 4**

MV2 told defendant that the images and videos he wanted were "child porn," but defendant did not care (PSR ¶ 31).  His threats continued.  At one point, defendant told MV2 she could either make the videos he wanted or kill herself (*id.*).  He bragged that the police could not get him, even though they had already tried (*id.*).

Investigators reviewed the contents of MV2's phone and found communications between MV2 and defendant in several social media accounts, including MV1's Snapchat and Instagram accounts (*id.*).  They saw instances in which defendant referred to MV2 as "suicide suzy" and threatened to post her "underage nudes online" (PSR ¶ 33).  There were also instances in which defendant offered to pay MV2 to self-produce sexually explicit videos (*id.*).

Minor Victim 3 (MV3) also reported being extorted online for sexually explicit images (PSR ¶ 34).  She started messaging defendant on Instagram in September 2021, when she was 14 years old (*id.*).  Defendant told her his name was "Robbie MacKenzie," that he was 22 years old, and that he lived in Riverside, California (PSR ¶ 35), none of which was true.  MV3 sent him nude images and videos of herself, including a video in which she was masturbating (*id.*).  Defendant offered to send her money for the images and videos (*id.*), but never did so.  However, he *did* give her a telephone number, which was the same number MV1's mother used to communicate with defendant (*id.*).

Agents executed a federal search warrant at defendant's Happy Valley residence on November 18, 2021 (PSR ¶ 36).  Defendant was not present; he was visiting his cousin in Riverside, California (*id.*).  Agents located and arrested defendant on the front

porch of his cousin's residence that same day (PSR ¶ 38). They seized two cell phones at the time of his arrest (*id.*).[2]

Searches of defendant's phones revealed evidence linking defendant with MV1, MV2, and MV3. They also contained communications in which defendant extorted *other* young girls for nude images, including one in which defendant told a different girl to either comply with his demands or kill herself (PSR ¶ 54). Agents found numerous sexually explicit media files depicting minors, including a video of MV2 masturbating (PSR ¶¶ 48, 56).

Defendant continued to reach out to MV1 even after his arrest. He called MV1's cell phone from jail 11 times (PSR ¶ 57). During a recorded jail call, defendant asked his mother to text MV1's phone (PSR ¶ 58). He also directed her to check his Snapchat account for outgoing messages to MV1, then delete his Snapchat account (PSR ¶ 59).

On February 15, 2023, defendant waived indictment and pled guilty to an information charging him with one count of online enticement of a minor (MV1), and two counts of sexual exploitation of a child (MV2 and MV3) (PSR ¶¶ 1-3). The Probation Office prepared a presentence report.

The report calculated the sentencing guidelines separately for each count. The calculations for Counts 1 and 2 are identical. The report assigned a base offense level of

---

[2] Someone at the Happy Valley residence told defendant about the search warrant. He used the short time between then and his arrest to send threatening messages to MV1's school friends using one of MV1's social media accounts. In those messages, he suggested he was going to shoot up the school, causing a lockdown at the school (PSR ¶ 37).

32 to each count under U.S.S.G. § 2G2.1 (PSR ¶¶ 67, 75). The report added two levels because MV1 and MV2 were under 16, two levels because the offenses involved distribution, and two more levels because defendant misrepresented his identity and used a computer to get each victim to engage in sexually explicit conduct, resulting in an adjusted offense level of 38 (PSR ¶¶ 68-70, 74, 76-78, 82). The calculations for Count 3 are the same except for the distribution enhancement, which did not apply (PSR ¶¶ 83-84, 88). The report then added three levels to account for the three separate victims and recommended a three-level reduction for acceptance of responsibility, resulting in a total offense level of 38, a criminal history category of I, and an advisory sentencing range of 235-293 months (PSR ¶¶ 89-92, 94-96, 101, 123). The Probation Office recommends a sentence of 20 years' imprisonment, followed by a ten-year term of supervised release (PSR Sent. Recommendation, at 1). The government concurs in the recommended term of imprisonment, but recommends a life term of supervised release.

## II.     DISCUSSION

### A.     *The Plea Agreement in This Case.*

The guideline calculations in the plea agreement mirror those in the presentence report (ECF No. 38, ¶ 8). Provided defendant accepts responsibility (which he has), the parties will jointly recommend concurrent sentences of 20 years' imprisonment on all counts (*id.*, ¶ 10). The parties each reserved the right to argue for an appropriate term of supervised release (*id.*).

Defendant agrees to pay restitution in the full amount of each victim's losses as determined by the Court (*id.*, ¶ 15). He also agrees to abandon all right, title, and interest, in the two phones seized at the time of his arrest (*id.*, ¶ 16). The agreement, which is governed by Fed. R. Crim. P. 1(c)(1)(B), contains a standard waiver of appeal and post-conviction relief (*id.*, ¶¶ 11, 12).

### B.  *The Appropriate Sentence in This Case.*

There is no dispute as to the guideline calculations in the presentence report. Nor is there a dispute over the term of imprisonment the Court should impose; the parties and the Probation Office all recommend a term of 20 years, which falls within the advisory guideline range. The only dispute is over the length of the supervised release term.

The guidelines, while advisory, remain the starting point and initial benchmark in all federal sentencing proceedings. *Peugh v. United States*, 133 S. Ct. 2072, 2080 (2013); *Gall v. United States*, 552 U.S. 38, 49 (2007). They are a statutory factor that sentencing courts must consider, 18 U.S.C. § 3553(a)(4), and "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *United States v. Rita*, 551 U.S. 338, 350 (2007). They "provide the framework for the tens of thousands of federal sentencing proceedings that occur each year," and "inform and instruct the district court's determination of an appropriate sentence." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346 (2016).

The Court must also consider the sentencing factors listed in 18 U.S.C. § 3553(a), including the defendant's history and characteristics, the nature and seriousness of the

offense, the need to provide just punishment and adequate deterrence, the need to promote respect for the law, and the need to protect the public from further crimes committed by the defendant. 18 U.S.C. §§ 3553(a)(1)-(2). Other factors include "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), and, where applicable, the need to provide restitution to any victims of the offense. 18 U.S.C. §3553(a)(7).

The 20-year sentence recommended by the parties and the Probation Office will fully serve the § 3553(a) sentencing factors. Defendant does not have a lengthy criminal history, but what he has is disturbing – a misdemeanor stalking conviction in 2007, and a felony stalking conviction in 2011, both in Riverside, California. The presentence report does not list the details of those offenses, but notes somewhat cryptically that "conviction relief" was granted in July 2022 (which was *after* defendant's arrest in this case).

The offense conduct is shocking and exceedingly serious. Defendant, pretending to be someone he is not, befriended adolescent girls online, convinced them to send him sexually explicit images or videos of themselves, then when they did, relentlessly extorted them for more. When they wouldn't comply, he threatened to – and *did* – send those images and videos to their family and friends. He repeatedly threatened the victims and their family members, and told two of them to either comply with his demands or kill themselves.

Defendant took over MV1's social media accounts then used them to entice other minors. When he learned of the search warrant at his residence, he used one of MV1's accounts to send messages to her school friends threatening to shoot up her school, triggering a lockdown. And even after his arrest, and while in pretrial detention, defendant continued to reach out to MV1, both personally and indirectly through his mother.

It appears from the contents of his two phones that defendant engaged in similar behavior with many other children in addition to the three charged victims in this case. He sent threatening messages to various girls demanding sexually explicit images or videos, including videos of those children having sex with others. He told one girl, "either do the deal or kill yourself, those are the only options" (PSR ¶ 54). And it appears that his bullying tactics worked, as he had numerous sexually explicit images and videos of children other than MV1, MV2, and MV3 stored in his phones.

A 20-year sentence acts as a significant deterrent, both to this defendant, and to others who extort children for sexually explicit images and videos. It promotes respect for the law, serves as just punishment, and most importantly, protects the public from future crimes defendant would otherwise commit. Moreover, since it is within the advisory guideline range, it would avoid unnecessary disparities with similarly situated offenders. It is the sentence the Court should impose.

### C.    Victim Impact.

The government has not received formal victim impact statements from MV1, MV2, or MV3.  However, MV1 and her mother have described the profound impact defendant's conduct has had on MV1.

MV1 told investigators that she felt "trapped" by defendant's extortionate conduct, and believed she "couldn't get away" (PSR ¶ 18).  At times, she was so scared that she would cry when defendant's name appeared on her phone (PSR ¶ 19).  She told investigators that she became depressed and started to cut herself (PSR ¶¶ 16, 62).  Her mother reported that in February 2021, MV1 suffered a huge "breakdown," and was scared that defendant (who she knew as "Robbie") was going to "come and rape her sister" and "kill her grandma" if she didn't send him the nude pictures he demanded (PSR ¶¶ 26, 62)

### D.    A Life Term of Supervised Release is Warranted.

Section 3583(k) provides for a term of supervised release of five years to life for each offense alleged in the information.  U.S.S.G. § 5D1.2(b) (Policy Statement) recommends "the statutory maximum term of supervised release" where "the instant offense of conviction is a sex offense."  Each offense of conviction is a "sex offense" as defined in U.S.S.G. § 5D1.2, Application Note 1.

The Ninth Circuit has repeatedly recognized that a life term of supervised release is appropriate for sex offenders like defendant.  *See, e.g. United States v. Overton*, 573 F.3d 679, 682 and 700-01 (9th Cir. 2009) (upholding a life term of supervised release

term for a defendant convicted of sexual exploitation of a minor, and receipt and possession of child pornography); *Daniels*, 541 F.3d at 924 (upholding a life term of supervised release for a defendant convicted of possessing child pornography because "a lifetime term of supervised release was necessary to punish [the defendant] for his crime, to rehabilitate him, and to protect the public from future crimes by [the defendant]"); *United States v. Cope*, 527 F.3d 944, 952 (9th Cir. 2008) (noting that the Ninth Circuit and other courts have held a life term of supervised release term to be reasonable).

A life term of supervised release is warranted here. Defendant engaged in highly exploitive and manipulative conduct. He assumed a false identity, convinced adolescent girls to send him sexually explicit images and videos, then relentlessly extorted them for more. And the three children identified in the information weren't his only victims. Defendant is dangerous and predatory, and will need a high level of supervision for a long time to ensure that he participates in mental health and sex offender treatment, and to help ensure that he does not return to his predatory ways.

The government concurs with the special conditions of supervision the Probation Office requests, and seeks one more that does not appear in their sentencing recommendation. Special condition 15 requires defendant to provide his probation officer with truthful and complete information about all computer hardware, software, electronic services, and data storage media to which he has access. Presumably, that is so the Probation Office can install appropriate computer monitoring software. However, they have not sought a computer monitoring condition. At the same time, they are not

seeking an absolute ban on defendant possessing or using computers or other digital devices; special condition 17 allows him to have and use devices approved in advance by his probation officer. Given the nature of defendant's offense conduct, the government requests that the Court add the following special condition of supervised release, which is the standard language used in this district:

> You must allow the probation officer to install computer monitoring software on any computer(s) (as defined in 18 U.S.C. § 1030(e)(1)) and computer-related device(s) you use, that can access depictions of sexually explicit conduct. To ensure compliance with the computer monitoring condition, you must allow the probation officer to conduct initial and periodic unannounced searches of any computers (as defined in 18 U.S.C. § 1030(e)(1)) and computer-related devices subject to computer monitoring. These searches shall be conducted for the purposes of determining whether the computer contains any prohibited data prior to installation of the monitoring software; to determine whether the monitoring software is functioning effectively after its installation; and to determine whether there have been attempts to circumvent the monitoring software after its installation. You must warn any other people who use these computers that the computers may be subject to searches pursuant to this condition.

### E.  Restitution.

At this writing, the government has received no restitution request from any victim in this case.

### III.  CONCLUSION AND SENTENCING RECOMMENDATION

The guideline calculations in the presentence report are correct. Defendant's total offense level is 38, his criminal history category is I, and his advisory guideline range is 235-203 months. For the reasons discussed above, the Court should impose concurrent sentences of 20 years' imprisonment on each count, followed by a life term of supervised

release.  The Court should impose the special conditions of supervision recommended by the Probation Office, plus the computer monitoring condition set forth above.

Dated:  October 11, 2023.                    Respectfully submitted,

                                             NATALIE K. WIGHT
                                             United States Attorney

                                             /s/ Gary Y. Sussman
                                             GARY Y. SUSSMAN, OSB #873568
                                             Assistant United States Attorney